1

2

3           **UNITED STATES DISTRICT COURT**

4           **DISTRICT OF NEVADA**

5                              * * *

6   UNITED STATES OF AMERICA,          )
                                        )
7                   Plaintiff,          )
                                        )        2:08-cr-0060-GMN-LRL
8   v.                                  )
                                        )        MOTION TO DISMISS (#18)
9   NORMAN MARTIN,                      )
                                        )
10                  Defendant.          )
                                        )
11  _____)

12                    **REPORT & RECOMMENDATION**

13          The defendant, Norman Martin, is under indictment on one count of Felon in Possession of a

14  Firearm and one count of Felon in Possession of Ammunition, in violation of 18 U.S.C. §§ 922(g)(1)

15  and 924 (a)(2). The firearms and ammunition were seized pursuant to a search warrant.  Martin has filed

16  a Motion to Dismiss (#18), in which he contends that his defense has been prejudiced by both pre-

17  indictment delay in violation of his Fifth Amendment right to due process, and post-indictment delay

18  in violation of his Sixth Amendment right to a speedy trial.  The court has reviewed the motion (#18),

19  the government's Opposition (#21), and defendant's Reply (#26), and submits the following report and

20  recommendation.

21                         **RELEVANT FACTS**

22          On May 11, 2006, Martin was arrested by the Las Vegas Metropolitan Police Department on

23  two counts of Prohibited Person in Possess of a Firearm (Ex-Felon) and one count of Possession of a

24  Controlled Substance (methamphetamine).  On May 16, 2006, a criminal complaint against Martin was

25  filed by the Clark County District Attorney.  On May 25, 2006, the Bureau of Alcohol, Tobacco,

26  Firearms and Explosives began its investigation of the case.  The matter was ultimately referred for

federal prosecution.  On March 12, 2008, approximately twenty-two months after the 2006 arrest, a federal grand jury sitting in Las Vegas returned an indictment charging one count of felon in possession of a firearm and one count of felon in possession of ammunition.  An arrest warrant issued the same day.  Twenty-seven months later, on June 24, 2010, Martin was arrested by federal authorities and brought before the court to face the instant charges.  Martin asks the court to dismiss the charges against him on the ground that both the pre-indictment delay and the post-indictment delay have prejudiced his defense.  Specifically he maintains that his defense is prejudiced because witnesses' memories have faded or they are no longer available to testify, the crime scene has been altered, and his ability to test the firearms has been compromised.

## DISCUSSION

The Fifth Amendment guarantees that defendants will not be denied due process as a result of excessive pre-indictment delay, *United States v. Sherlock*, 962 F.2d 1349, 1353 (9th Cir. 1992), while excessive post-indictment delay is barred by the Sixth Amendment right to a speedy trial.  *United States v. Marion*, 404 U.S. 307, 320 (1971).  Martin contends that when the pre-indictment delay in this case is considered together with the post-indictment delay, the prejudice to him is "crystal clear."  Mot. (#18) at 10.  While the combination of the two periods of delay captures a certain "gestalt" of the four years which passed between the alleged offense and Martin's first appearance in court, "the drill is for courts separately to analyze pre-indictment delay under *Marion* and *Lovasco*,[1] then to analyze post indictment/pre-trial delay under *Barker v. Wingo*, 407 U.S. 514 (1972) and *Doggett v. United States*, 505 U.S. 647 (1992)."  *United States v. Dionisio*, 2008 WL 4534352 at *5 (D. Wisc. October 6, 2008) (declining to analyze defendant's pre- and post-indictment delays as a combined nine-year delay).

**Post-Indictment Delay**

The Sixth Amendment provides in pertinent part, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  Excessive post-indictment delay is barred by the Sixth

---

[1] *United States v. Lovasco*, 431 U.S. 783 (1977).

Amendment right to a speedy trial. *Marion*, 404 U.S. at 320. Before the court will dismiss an indictment on the basis of prejudicial delay, however, the defendant must demonstrate that the delay actually or substantially prejudiced his right to a fair trial. *Id.* at 324. In *Barker v. Wingo*, the Supreme Court enunciated a four factor balancing test used to assess an alleged violation of the speedy trial right. 407 U.S. at 519. Specifically, courts consider (1) length of delay; (2) reason for the delay; (3) defendant's assertion of his rights; and (4) prejudice to the defendant. *Id.* at 529. Courts "'regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant.'" *United States v. Tanh Huu Lam*, 251 F.3d 852, 856 (9th Cir. 2001) (quoting *Barker*, 407 U.S. at 533).

**1. Length of Delay**

The first factor, length of delay, is a threshold issue. *See United States v. Beamon*, 992 F.2d 1009, 1012 (9th Cir. 1993). Only where the delay is "presumptively prejudicial" must a court inquire into the other factors, "since, by definition, [a defendant] cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted him with customary promptness." *Doggett,* 505 U.S. at 651-52. The Ninth Circuit has found a six month delay to be "borderline," but noted that "the lower courts have generally found post-accusation delay 'presumptively prejudicial' at least as it approaches one year." *Lam*, 251 F.3d at 856 (quoting *Doggett*, 505 U.S. at 652 n.1). Here, the post-indictment delay from the filing of the Indictment until Martin's arrest was twenty-seven months. The government concedes that "the defendant is probably correct that the delay in this case is long enough to trigger a *Barker* analysis." Opp'n (#21) at 5. The court agrees and will thus proceed to the other *Barker* factors.

**2. Reason for the Delay**

In analyzing the reason for the delay, the court must evaluate whether the fault lies with the government or the defendant. If the delay can be attributed to Martin, he will be deemed to have waived his speedy trial rights entirely. *United States v. Manning*, 56 F.3d 1188, 1195 (9th Cir. 1995). The

3

government, however, has the primary, though not exclusive, responsibility to ensure that the defendant is brought to trial. *United States v. Mendoza*, 530 F.3d 758, 763 (9th Cir. 2008).  Thus, while the government is not required to "make heroic efforts to apprehend a defendant who is purposefully avoiding apprehension." *Mendoza*, 530 F.3d at 763 (quoting *Sandoval*, 990 F.2d at 485 (citations and quotations omitted)); *see Rayborn v. Scully*, 858 F.2d 84, 90 (2d Cir. 1988)), if the defendant is not attempting to avoid detection and the government makes no serious effort to find him, the government is considered negligent in its pursuit.  *Mendoza*, 530 F.3d at 763 (citing *Doggett*, 505 U.S. at 653).

Martin maintains that the blame for the twenty-seven month delay in locating him lies squarely with the government's failure to try to find him.  Martin is not alleged to have evaded detection by law enforcement.  *See e.g.*, *Manning*, 56 F.3d at 1195 (affirming waiver of speedy trial right where defendant "knew of the indictment against him and ... resisted all efforts to bring him to the United States") (internal quotations omitted); *United States v. Sandoval*, 990 F.2d 481, 483 (9th Cir. 1993) (finding waiver appropriate where a defendant "purposely absented himself from the proceedings").  Rather, Martin could easily have been located had the government made even a perfunctory effort to look.[2]  The government does not deny that it played a role in the delay, but argues that Martin must share the blame because he didn't elect to turn himself in. The court cannot agree.  To do so would be to place the government's burden to exercise its due diligence to apprehend a defendant on the defendant himself.  The record indicates that the government made virtually no attempt to locate or apprehend him. The court therefore finds that the reason for delay is directly attributable to the

---

[2]  For example, approximately three months after the indictment was filed, Martin registered his address with local law enforcement as required under NRS 179C.100. Mot. (#18) at 3.  Martin has remained at that address since he registered in June 2008.  *Id.* The only time Martin did not physically reside at the address was when he was in state custody – from January 20, 2009 through October 13, 2009, when he was paroled.  After he was released, he diligently stayed in contact with his parole officer.  Reply (#26) at 3.  Additionally, Martin was arrested three times in 2008: June 19, 2008, August 4, 2008, and October 6, 2008. He points out that the government could have identified and located him in state custody through a few methods, including running his name or Nevada ID number through the state SCOPE system; a computer check of the Blackstone or NDOC Inmate Online Search; or, if the government had his FBI fingerprints, by running his fingerprint number through its database.  Mot. (#18) at 6.  Finally, Martin notes, it does not appear that upon obtaining the federal warrant, the government entered it into the National Crime Information Center system, which would have advised other agencies that came into contact with Martin that there was an active federal warrant for him.  *Id.*

4

government negligence.

### 3. Assertion of the Speedy Trial Right

Assertion of the speedy trial right is entitled to strong evidentiary weight, but it also must be viewed in light of the defendant's other conduct. *See United States v. Loud Hawk*, 474 U.S. 302, 314-315 (1986). For example, where the delay of trial is attributable to the defendant, the weight of his assertion of speedy trial right is diminished. *Lam*, 251 F.3d at 859 (finding defendant's attorney's repeated requests for continuances were attributable to defendant, and therefore "considerably diminish the weight of [defendant's] assertions of his speedy trial right"). Thus, for example, where a defendant knows of the existence of charges or an indictment against him and does not act to resolve them, he may be deemed to have waived his speedy trial right. *See Doggett*, 505 U.S. at 653 (explaining that this third *Barker* factor would weigh heavily against a defendant who knew of his indictment but took no steps to address it). *See United States v. Manning*, *supra*.

The government opines that Martin may have waived his speedy trial rights because he "concedes in his motion that he knew of the charges at the state level, and appears to acknowledge that he knew the charges were ultimately dismissed at the state level in favor of federal charges." Opp'n (#21) at 6-7. However, there is no evidence or concession that Martin did actually know about the federal indictment, or that he even knew the case would be turned over to the federal authorities when the state charges were dismissed. On the record, the earliest that Martin can be said to have actually known about the indictment was in the beginning of June, 2010, when the government notified him and his parole officer about "the existence of the warrant in his case." *Id.* at 6. His initial appearance and arraignment and plea were held on June 24, 2010. He filed the instant motion asserting his speedy trial right one month later, on July 23, 2010. Accordingly, Martin timely asserted his speedy trial right as soon as practicable given the circumstances. [3]

---

[3] The government also submits points and authorities regarding the Speedy Trial Act. *See* Opp'n (#21) at 7-8. Martin has not alleged that the government violated the Act, only that his Sixth Amendment rights have been violated. Hence, the court will not address this part of the government's Opposition.

### 4. Prejudicial Effect of the Delay

The final *Barker* factor requires the court to weigh the prejudicial effect, if any, of the delay. "Actual prejudice can be shown in three ways: oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the accused's defense will be impaired." *Beamon,* 992 F.2d at 1014 (citing *Doggett*, 505 U.S. at 654). Where the defendant himself is responsible for the delay, he carries a heavy burden of demonstrating actual prejudice. *Lam*, 251 F.3d at 859 (citing *Manning*, 56 F.3d at 1195; *see also United States v. Aguirre*, 994 F.2d 1454,1458 (9th Cir. 1993). However, where the government's own negligence has caused the delay, the "concern for substantiating prejudice diminishes as delay mounts." *Beamon*, 992 F.2d at 1013 (citing *Doggett*, 112 S. Ct. at 2693).

Martin argues, "[g]iven that a presumption of prejudice exists, [he] is under no obligation show prejudice." Mot. (#18) at 8. The Ninth Circuit has explained that if a twenty month delay "were sufficient as a matter of law to relieve the defendant of the burden of coming forward with any showing of actual prejudice, the presumption of prejudice would be virtually irrebuttable," *Beamon*, 992 F.2d at 1014, but has held that a "[f]ive year delay attributable to the government's mishandling of [defendant's] file, like the eight year delay in *Doggett*, creates a strong presumption of prejudice." *United States v. Shell*, 974 F.2d 1035 (9th Cir. 1992). The delay here is only seven more months than the twenty-month delay cited in *Beamon* and slightly over half that in *Shell*. Accordingly, the court finds the delay in apprehending Martin, while attributable to government negligence, is not long enough to create such a "strong presumption" of prejudice as to relieve him of the burden of demonstrating actual prejudice. *See Beamon*, 992 F.2d at 1014.

Martin submits that his defense has been actually prejudiced because "[t]he crime scene has changed, the ability to test the firearms has been compromised and memories have faded with the erosion of time." Mot. (#18) at 8. The government responds that, "the crime scene always changes between the time of arrest and trial," and "the ability to test the firearms has not been compromised in any way [,because the] Bureau of Alcohol, Tobacco, and Firearms is still in possession of the firearms in question and they can still be tested." Opp'n (#21) at 9. The court agrees. The "crime scene"

consists of the searched premises where the firearm and ammunition were found.  The police officers' possible failure to adequately document and photograph the search scene could inure to Martin's benefit, not prejudice.  And, as the government notes, the seized firearm and ammunition are available for testing, if Martin wishes to do so.  Hence, in neither respect has Martin demonstrated that the delay at issue has caused the degree of prejudice that would warrant dismissal of the Indictment.

Martin's final argument is that he is actually prejudiced by his inability to locate witnesses and/or the witnesses' fading memories.  First it must be noted that this is not a particularly complex case.  A confidential informant ("CI") provided information about Martin to a detective, who after corroborating the information, obtained a search warrant.  The incriminating evidence in this case was seized during the search of the subject premises.  At that time, several witnesses were interviewed and the interviews were recorded.  Copies of the recorded interviews have been provided to Martin.

Martin is particularly concerned that he can't locate the CI and call him or her as a witness in this matter. The CI is not alleged to have been present when the search warrant was executed.  While the CI's testimony could be relevant to the sufficiency of the search warrant, as the government points out, that would be a suppression matter decided before trial.  *See* Opp'n (#21) at 10.  Thus, Martin's inability to locate the CI is not material to a showing of prejudice to Martin's defense at *trial*.[4]  In reply, Martin asserts that "primary witnesses in this matter will likely not be located, including the CI."  Reply (#26) at 8.  Martin's generalized assertion that he is unable to confront witnesses, including the CI, does not amount to a demonstration of actual prejudice. *See Manning*, 56 F.3d at 1194 (holding in the context of pre-indictment delay, "Generalized assertions of the loss of memory, witnesses, or evidence are insufficient to establish actual prejudice.").  Martin does not specify, for example, which "primary witnesses" can't be located, or how their testimony may or may not affect his defense.  Without such

---

[4] Martin additionally asserts that he is prejudiced because he will not be able to call witnesses at a suppression hearing he requested in his Motion to Suppress (#19).  In that motion, however, he challenged only the sufficiency of the probable cause showing in the affidavit in support of the search warrant.  On October 5, 2010, the undersigned filed a Report and Recommendation that the motion to suppress (#19) be denied without a hearing.  *See* Report and Recommendation (#28).  As explained in the R&R (#28), an evidentiary hearing was not warranted because no showing was made under *Franks v. Delaware*, 438 U.S. 154 (1978), that would have warranted a hearing.  *See* R&R (#28) at 11.

1   specifics, he has not shown actual prejudice.  The motion to dismiss on the ground of post-indictment

2   delay should therefore be denied.

3   **Pre-Indictment Delay**

4          The Fifth Amendment guarantees that defendants will not be denied due process as a result of

5   excessive pre-indictment delay.  *United States v. Sherlock*, 962 F.2d 1349, 1353 (9th Cir. 1992).  While

6   generally any delay between the commission of a crime and an indictment is limited by the statute of

7   limitations, *United States v. Huntley*, 976 F.2d 1287, 1290 (9th Cir. 1992), in some circumstances, "the

8   Due Process Clause requires dismissal of an indictment brought within the [statute of] limitations

9   period."  *Id.*  To establish a due process violation arising out of pre-indictment delay, the defendant

10   must demonstrate that the government's delay was done intentionally to gain a tactical advantage or

11   harass the defendant, and that the delay caused actual and substantial prejudice.  *United States v.*

12   *Marion*, 404 U.S. at 324-25.

13          It is the defendant's burden to show actual prejudice.  *Lovasco*, 431 U.S. at 788; *United States*

14   *v. Carruth*, 699 F.2d 1017, 1019 (9th Cir. 1984).  To meet this burden, Martin must show definite, non-

15   speculative proof of prejudice suffered by the delay, *e.g.*, how a missing witness or evidence would be

16   prejudicial to his case.  *United States v. Moran*, 759 F.2d 777, 782 (9th Cir. 1985); *see United States*

17   *v. Huntley*, 976 F.2d 1287, 1291 (9th Cir. 1992) (to "establish actual prejudice, therefore, the defendant

18   must show that the loss of testimony meaningfully has impaired his ability to defend himself").  If

19   Martin can meet this burden, the court must then evaluate whether the length of delay, when balanced

20   against the reason for the delay, offends "'those fundamental conceptions of justice which lie at the base

21   of our civil and political institutions.'"  *Huntley*, 976 F.2d at 1290 (quoting *Sherlock*, 962 F.2d at 1354).

22          Martin has not demonstrated that the loss of testimony or evidence has meaningfully impaired

23   his ability to defend himself.  *See Huntley*, 976 F.2d at 1290.  Martin refers only to the arguments he

24   offered in his discussion of post-indictment prejudice: fading memories of witnesses; the changing

25   crime scene; and his compromised ability to test the firearms.  As noted above, the firearms in this case

26   are available for testing; and Martin doesn't explain how the changed crime scene affects his defense.

As for the loss of testimonial evidence, as noted *supra*, other than his inability to locate the CI, Martin has alleged only generally that some witnesses may be difficult to find and that their memories probably have faded.   However, "generalized assertions of the loss of memory, witnesses, or evidence are insufficient to establish actual prejudice."  *Manning*, 56 F.3d at 1194; *see United States v. De Jesus Corona-Verbera*, 509 F.3d 1105, 1113 (9th Cir. 2010) (finding that defendant failed to show actual prejudice where he merely speculated as to what they would have said and offered "no affidavits nor any non-speculative proof as to how he was prejudiced by the loss of his witnesses").  Moreover, the Ninth Circuit has held that, "generally, protection from lost testimony 'falls solely within the ambit of the statute of limitations." *Id.* (quoting *Sherlock*, 962 F.2d at 1354).  Because Martin does not meet the threshold burden of demonstrating actual prejudice, the court need not balance the length of delay against the government's reasons for delay.  The court does note, however, that there has been no showing that the government's delay in filing the charges in this case was done deliberately with the intent to gain a tactical advantage or to harass the defendant.

## RECOMMENDATION

Based on the foregoing, it is the recommendation of the undersigned United States Magistrate Judge that Martin's  Motion to Dismiss (#18) should be denied.

DATED this 12th day of October, 2010.

**LAWRENCE R. LEAVITT**
**UNITED STATES MAGISTRATE JUDGE**